UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

S. KATZMAN PRODUCE, INC., et al.,

    Plaintiff,

  -v-                                                        No. 17 CV 7930-LTS

JAT BEVERAGE INC., et al.,

    Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiffs S. Katzman Produce, Inc., and Katzman Berry Corp. (collectively, "Plaintiffs") move for a default judgment against Defendant Joanne Rodriguez d/b/a Albatross Produce ("Rodriguez"), pursuant to Federal Rule of Civil Procedure 55(b)(2) and S.D.N.Y. Local Civil Rule 55.2(b), on claims arising from Rodriguez's receipt, retention, and disbursement of assets held in trust pursuant to the trust provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c).[1] (Docket entry no. 123.) Rodriguez has not appeared or responded to the claims asserted against her in this action, despite being afforded ample time and opportunity to do so. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and § 1367(a). The Court has reviewed Plaintiffs' submissions carefully and, for the following reasons, Plaintiffs' motion for default judgment is granted.

---

[1]     Other Defendants in this action include JAT Beverage Inc. t/a JAT Produce ("JAT Beverage"), Starlight Food Service, Inc. t/a JAT Produce ("Starlight"), Ariel L. Tejada, and Daniel E. Tejada (collectively, the "JAT Defendants"), as well as On Deck Capital, Inc. ("On Deck"). Plaintiffs' claims against the JAT Defendants were resolved pursuant to a May 23, 2018, Stipulation and Order (docket entry no. 122, the "Stipulation"), and the parties have advised the Court that all claims against On Deck have also been settled (<u>see</u> docket entry no. 160).

BACKGROUND

The following recitation of facts is drawn from Plaintiffs' First Amended Complaint (docket entry no. 64, the "FAC"), as well as uncontroverted documentary evidence submitted by Plaintiffs in connection with the instant motion practice. In light of Rodriguez's failure to respond to the FAC, Plaintiffs' well-pleaded factual allegations are deemed admitted. See Fed. R. Civ. P. 8(b)(6); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 19992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability.").

Plaintiffs are New York corporations engaged in the business of buying and selling wholesale quantities of produce in interstate commerce. (FAC ¶¶ 3-4.) Defendants JAT Beverage and Starlight are New York corporations engaged in the business of buying wholesale quantities of produce in interstate commerce. (FAC ¶¶ 5-6.) Defendants Ariel L. Tejada and Daniel E. Tejada were officers, directors, and/or shareholders of JAT Beverage and Starlight who controlled the operations of both companies. (FAC ¶¶ 7-8.)

Between August 8, 2017, and September 20, 2017, Plaintiffs sold and delivered produce worth $200,947.00 to the JAT Defendants. (FAC ¶ 13.) Plaintiffs assert that, "[a]t the time of receipt of the produce [by JAT Defendants], Plaintiffs became beneficiaries in a statutory trust designed to assure payment to produce suppliers. The trust consists of all produce or produce-related assets, including all funds commingled with funds from other sources and all assets procured with such funds, in the possession or control of Defendants since the creation of the trust." (FAC ¶ 15.) For each transaction, Plaintiffs issued invoices to the JAT Defendants containing the statutory language required by 7 U.S.C. § 499e(c)(4), and notifying JAT Defendants that Plaintiffs would seek to recover reasonable attorneys' fees and interest at a rate

of 1.5% per month in the event of the enforcement of Plaintiffs' trust claim.  (FAC ¶ 16; docket entry no. 124, Brown Decl. Ex. E.)

Plaintiffs commenced this action to enforce their PACA trust claims against the JAT Defendants on October 16, 2017.  (Docket entry no. 1.)  Pursuant to the November 8, 2017, Preliminary Injunction Order (docket entry no. 17, the "PI Order"), Plaintiffs have recovered $15,046.59 from the JAT Defendants' bank account, and $60,000 from now-dismissed Defendants Ace Funding Source LLC and Yellowstone Capital LLC.  (Brown Decl. ¶ 11.)  On May 23, 2018, JAT Defendants entered into a Stipulation and Order admitting joint and several liability to Plaintiffs under the trust provisions of PACA for a debt in the aggregate principal amount of $125,900.41, plus accrued interest at the rate of 18% per annum, and reasonable attorneys' fees, for a total debt in the amount of $211,783.86.  (Stipulation ¶ 1.)  On July 20, 2018, after JAT Defendants failed to make payments in accordance with the terms of the Stipulation, the Court, pursuant to the terms of the Stipulation, entered a Final Order and Judgment against JAT Defendants for a debt in the principal amount of $125,900.41, plus interest and attorneys' fees, and less any payments made by the JAT Defendants, for a total judgment amount of $208,783.86.  (Docket entry no. 147.)

On February 16, 2018, Plaintiffs filed the FAC, asserting claims against Defendant Rodriguez, an individual residing in the State of New York and registered to do business in the City of New York as Albatross Produce.  (FAC ¶ 9.)  A summons and a copy of the FAC were delivered to Rodriguez's home and left with her husband on March 2, 2018, and additional copies of the pleadings were mailed to Rodriguez that same day.  (Docket entry no. 89.)  When Rodriguez failed to appear or file an answer, Plaintiffs requested entry of a certificate

of default against her. The certificate was entered by the Clerk of Court on April 5, 2018. (Docket entry no. 97.)

The FAC alleges that Rodriguez received, dissipated, and continues to retain PACA trust funds directly from Starlight or from third parties for the benefit of Starlight. (FAC ¶¶ 61-78.) The FAC also alleges that Rodriguez is "an officer, director and/or shareholder who operated JAT Beverage and Starlight during the relevant time period" (FAC ¶ 68), that Rodriguez "was in a position of control over the PACA trust assets belonging to Plaintiffs" (FAC ¶ 68), and that Rodriguez "has, on occasion, assumed and paid the debts of JAT Beverage and Starlight" (FAC ¶ 73), "has continued the operations of JAT Beverage and Starlight after the commencement of this action" (FAC ¶ 74), and has continued the operations of JAT Beverage and Starlight "solely as a means of enabling the JAT Defendants to fraudulently escape their liability to Plaintiffs" (FAC ¶ 76).

In support of these allegations, Plaintiffs proffer checks, issued prior to the commencement of this action, demonstrating that Rodriguez and Albatross received $4,700 from Starlight in June and July 2017 (Brown Decl. Ex. H), and demonstrating that Rodriguez has, on one occasion, paid Plaintiffs for debts owed by the JAT Defendants (Brown Decl. ¶ 16; Ex. I). Plaintiffs also proffer statements from Rodriguez's personal bank account, which demonstrate that Rodriguez's personal bank account began receiving unusually large deposits of tens of thousands of dollars per month after the PI Order was entered against the JAT Defendants, and that Rodriguez began making payments to the JAT Defendants' creditors shortly thereafter. (Brown Decl. ¶ 18, Ex. K.) Plaintiffs argue that in total, these invoices show that between November 2017 and April 2018, Rodriguez deposited funds totaling more than $100,000 into her account, which had previously only received deposits of bi-weekly paychecks and other smaller

amounts.  (Id.)  Plaintiffs allege that the funds received by Rodriguez consisted of proceeds from the sale of produce by Plaintiffs to the JAT Defendants.  (FAC ¶ 63.)  Plaintiffs also proffer evidence that suggests Rodriguez resides at the same address in Bayside, New York, as JAT Defendant Ariel Tejada (Brown Decl. ¶ 13, Ex. B) and evidence which shows that Ariel Tejada has entered the Hunts Point Terminal Market Cooperative Association using the identity card and business address of Albatross Produce (Brown Decl. Ex. F, G).  A check signature card for Albatross Produce's account at JP Morgan Chase Bank demonstrates that Ariel Tejada has check signing authority, along with Rodriguez, for checks drawn on bank accounts belonging to Albatross Produce.  (Brown Decl. Ex. J.)

DISCUSSION

Default Judgment

In determining whether to grant a motion for default judgment, courts within this district first consider three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (citation omitted); see also Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court grant of a default judgment).  The Court finds that all three factors weigh in Plaintiffs' favor.  Rodriguez's failure to respond to Plaintiffs' FAC and the instant motion is indicative of willful conduct.  See Indymac, 2007 WL 4468652, at *1 (holding that non-appearance and failure to respond to a complaint or motion for default judgment indicate willful conduct). Moreover, the Court is unaware of any meritorious defenses and, as Rodriguez has failed to

appear, she has not proffered any defense.  Finally, the Court finds that Plaintiffs will be prejudiced and left with no alternative recourse if they are denied the ability to seek judgment by default.

Although Rodriguez has not appeared to defend this action and the Clerk of Court has entered a certificate of default, this Court must determine "whether the allegations in Plaintiff's complaint are sufficiently pleaded to establish [Rodriguez's] liability." Lenard v. Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012).

(1) Ninth Cause of Action: Unlawful Receipt and Retention of PACA Trust Assets

In their Ninth Cause of Action, Plaintiffs allege that Rodriguez, a third party, unlawfully received and continues to retain PACA trust assets.  Under the trust provisions of PACA, "perishable commodities or proceeds from the sale of those commodities are held in trust by the buyer for the benefit of the unpaid seller until full payment is made." Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705 (2d Cir. 2007).  The trust created by PACA is governed by general trust principles. Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1069 (2d Cir. 1995).  Thus, "when trust assets are held by a third party, resulting in the failure of the trustee to pay unpaid sellers of perishable agricultural commodities, the third party may be required to disgorge the trust assets." Nickey Gregory Co., LLC v. AgriCap, LLC, 597 F.3d 591, 595-6 (4th Cir. 2010) (citing Endico Potatoes, 67 F.3d at 1067-68).

The allegations in the FAC, along with the Stipulation, establish that a PACA trust was created at the time JAT Defendants received certain produce worth $200,947.00 (FAC ¶¶ 13, 15); that Plaintiffs preserved their respective interests in the PACA trust (FAC ¶ 16; Brown Decl. Ex. E); and that the JAT Defendants are currently liable, jointly and severally, in the principal amount of $125,900.41 for their failure to make full payments to Plaintiffs under

the PACA trust provisions (Stipulation ¶ 1).  The Court accepts as admitted Plaintiffs' allegations that Rodriguez "received funds from third parties for the benefit of Starlight or directly from Starlight," that these funds "consisted of proceeds from the sale of produce," and that "Rodriguez continues to hold any and all proceeds from the sale of produce having come into her possession."  (FAC ¶¶ 62-65.)  Plaintiffs' allegations are further supported by uncontroverted documentary evidence demonstrating that, prior to the commencement of this action, Rodriguez had received payments from Starlight (Brown Decl. Ex. H) and had made payments to Plaintiffs on behalf of the JAT Defendants (Brown Decl. Ex. I).  Then, between November 2017 and April 2018, after the PI Order had been issued in this case, Rodriguez began receiving unusually large deposits, which Plaintiffs argue total over $100,000, into her bank account (Brown Decl. Ex. K), and Rodriguez subsequently began issuing payments from her personal bank account to the JAT Defendants' produce suppliers and employees (Brown Decl. ¶ 18, Ex. K).  In contrast, before the PI Order was issued, Rodriguez had only been receiving deposits of bi-weekly paychecks and other smaller amounts.  (Id.)

The Court infers that at least some of the deposits into and out of Rodriguez's account constitute PACA trust assets based upon Plaintiffs' uncontroverted allegations that the funds received by Rodriguez consisted of proceeds from the sale of produce (FAC ¶ 63), that Rodriguez assumed and paid the debts of JAT Defendants (FAC ¶ 73), that Rodriguez assumed such debts to enable JAT Defendants to escape their liability to Plaintiffs (FAC ¶ 76), and evidence suggesting that Rodriguez and Albatross Produce's business operations were closely linked with those of Ariel Tejada, one of the JAT Defendants (see Brown Decl. ¶¶ 13, Exs. B, F, G, J).  Because there is no evidence that Rodriguez has given anything of value in exchange for the deposits into her personal bank account, and because Rodriguez shares a residence with Ariel

Tejada (Brown Decl. ¶ 13, Ex. B) and has previously been served on Ariel Tejada's behalf in this litigation (docket entry nos. 35, 39), she cannot reasonably contend that she provided value for the trust assets she received, or that she had no actual or constructive notice of the trust.  See Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 615 (2d Cir. 2001) (noting that, for a third party transferee to qualify as a bona fide purchaser and escape liability in a PACA case, transferee must show that the trust assets were taken for value and without notice of breach of trust).  Accordingly, Plaintiffs have satisfied the elements required to establish liability on their Ninth Cause of Action for the receipt and retention of PACA trust assets.

   (2) Eleventh Cause of Action: Successor Liability

In their Eleventh Cause of Action, Plaintiffs allege that Rodriguez is liable as a successor to the JAT Defendants because she continued their operations as a produce wholesaler. (FAC ¶¶ 72-78.)  Although the Second Circuit has not yet addressed the applicability of successor liability in the PACA context, the "scant discussion" in this circuit suggests that a successor may be liable for its predecessor's PACA liability.  Hop Hing Produces Inc. v. X & L Supermarket, Inc., No. CV 2012-1401(ARR)(MDG), 2013 WL 1232948, at *9 (S.D.N.Y. Mar. 26, 2013); see also Moza LLC V. Tumi Produce Int'l Corp., 17CV1331, 2018 WL 2192188, at *3-4 (S.D.N.Y. May 14, 2018) (discussing successor liability in PACA context).  Under New York law, a corporation that purchases the assets of another is generally not liable for the seller's debts unless "(1) [the successor] expressly or impliedly assumed the predecessor's [debts], (2) there was a consolidation or merger of seller and purchaser [i.e., a de facto merger], (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations."  Hop Hing Produces, 2013 WL 1232948, at *9 (quoting N.Y. v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006)).  In analyzing

whether a de facto merger has occurred, courts consider "(1) continuity of ownership; (2) cessation of ordinary business by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management personnel, physical location, assets, and general business operation." Moza, 2018 WL 2192188, at *4. While "not all of these elements are necessary to find a de facto merger," there "must be continuity of ownership, because it is the essence of a merger." Id. (internal citations and quotations omitted).

Here, the uncontroverted allegations in the FAC and documentary evidence proffered by Plaintiffs do not show any asset purchase but, rather, demonstrate that Rodriguez has received the JAT Defendants' trust assets and carried on their business directly. This record is sufficient to establish Rodriguez's liability as a successor of the JAT Defendants. The FAC alleges that Rodriguez "has, on occasion, assumed and paid the debts of JAT Beverage and Starlight" (FAC ¶ 73), "has continued the operations of JAT Beverage and Starlight after the commencement of this action" (FAC ¶ 74), and has continued the operations of JAT Beverage and Starlight "solely as a means of enabling the JAT Defendants to fraudulently escape their liability to Plaintiffs" (FAC ¶ 76). Moreover, the Court infers from Rodriguez's bank statements that Rodriguez continued the JAT Defendants' business by processing the JAT Defendants' accounts payable and receivable through her personal account (Brown Decl. ¶ 18, Ex. K), and that there is continuity of ownership based upon evidence that JAT Defendant Ariel Tejada has entered the Hunts Point Terminal Market Cooperative Association using the identity card and business address of Albatross Produce (Brown Decl. Ex. F, G), and that Ariel Tejada has check signing authority, along with Rodriguez, for checks drawn on bank accounts belonging to Albatross Produce. (Brown Decl. Ex. J.) The timing of certain unusually large deposits into

Rodriguez's bank account, which Plaintiffs allege are proceeds from the sale of produce by the JAT Defendants, also supports an inference that Rodriguez's continuation of the JAT Defendants' operations was undertaken to allow the JAT Defendants to evade their liability to Plaintiffs. Accordingly, the Court finds that Plaintiffs have tendered uncontroverted allegations and evidence sufficient to establish Rodriguez's liability as successor to the JAT Defendants.[2]

Default Damages

Under PACA, perishable agricultural commodities are to be held in a trust by purchasing dealers "until full payment of the sums owing in connection with" the purchase is received. 7 U.S.C.S. § 499e(c)(2) (LexisNexis 2001). When third parties receive trust assets from PACA debtors, "the unpaid commodities sellers have a prior interest in them and can recover from [those third parties] to the full satisfaction of their debts up to the limit of trust assets held while they remain unpaid." Nickey Gregory, 597 F.3d at 607 n. 2. Because Rodriguez assumed and continued the JAT Defendants' PACA business, she is also liable as a successor to the JAT Defendants for any unpaid PACA liability arising from that business. Accordingly, the Court finds that Rodriguez is liable to Plaintiffs in the amount of $125,900.41, which represents the JAT Defendants' unpaid principal liability under PACA.

The Second Circuit has confirmed that, "where the parties' contracts include a right to [reasonable] attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA." Coosemans Specialties, 485 F.3d at 709 (citations omitted) (affirming judgment awarding principal, interest, and attorneys' fees to

---

[2] In light of the Court's conclusions with respect to the Ninth and Eleventh Causes of Action, the Court need not address Plaintiffs' Tenth Cause of Action.

plaintiffs under PACA). It is similarly settled that reasonable contractual prejudgment interest provisions are enforceable under PACA. <u>Tomato Mgmt., Corp. v. CM Produce LLC</u>, No. 14 Civ. 3522 (JPO), 2014 WL 2893368, at *1 (S.D.N.Y. June 26, 2014). Where the parties' contract so provides, "the interest and collection costs become subject to the PACA trust together with the principal debt." <u>Dayoub Mktg., Inc. v. S.K. Produce Corp.</u>, No. 04 CIV. 3125 (WHP), 2005 WL 3006032, at *4 (S.D.N.Y. Nov. 9, 2005). Here, Plaintiffs' invoices provide that Plaintiffs are entitled to recover interest at an annual rate of 18% and attorneys' fees as "sums owing in connection with" their PACA trust transactions. (Brown Decl., Ex. E.) The Court finds the rates and time charged by Plaintiffs' attorney (<u>see</u> Brown Decl. Ex. M) and the contracted interest rate are reasonable. Accordingly, the Court finds that Plaintiffs are entitled to judgment against Rodriguez in the principal amount of $125,900.41, plus accrued interest at an annual rate of 18% through May 22, 2018, in the amount of $24,517.60, and accrued attorneys' fees through May 22, 2018, in the amount of $67,274.66, for a total judgment in the amount of $217,692.67.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment as against Rodriguez is granted. Plaintiffs are hereby awarded judgment against Rodriguez in the principal amount of $125,900.41, plus accrued interest at an annual rate of 18% through May 22, 2018, in the amount of $24,517.60, and accrued attorneys' fees through May 22, 2018, in the amount of $67,274.66, for a total judgment in the amount of $217,692.67. Plaintiffs must credit any further payment by the JAT Defendants against Rodriguez's liability. The Clerk of Court is respectfully requested to enter judgment accordingly and to close this case. This Memorandum Order resolves docket entry no. 123.

SO ORDERED.

Dated: New York, New York
December 7, 2018

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge